# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**Jason E. Waybright,**
**Petitioner Below, Petitioner**

**FILED**

March 14, 2014
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs)   No. 13-0899** (Fayette County 13-C-127)

**David Ballard, Warden, Mt. Olive Correctional Complex,**
**Respondent Below, Respondent**

## MEMORANDUM DECISION

Petitioner Jason E. Waybright, appearing *pro se*, appeals the August 1, 2013 order of the Circuit Court of Fayette County that dismissed his petition for a writ of habeas corpus challenging his conviction on a prison disciplinary violation. Respondent Warden, by counsel John H. Boothroyd, filed a summary response. Petitioner filed a reply.

The Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioner is an inmate at Mt. Olive Correctional Complex. On January 2, 2013, Investigator Curtis Dixon charged petitioner with violating disciplinary rule 1.03(3) which provides, in pertinent part, that no inmate shall "engage in any sexual act, such as, but not limited to . . . kissing, fondling[.]"[1] Investigator Dixon issued a violation report following his interview of Correctional Officer Brittany Taylor who stated that on December 21, 2012, she observed petitioner and two other inmates "kiss each other on the cheek, grab each other on the butt, and hug each other" in Oak Hall.

A disciplinary hearing occurred on January 14, 2013. Petitioner moved to dismiss the charge because (1) the employee making the violation report (Investigator Dixon) was not the charging employee (Correctional Officer Taylor); and (2) Policy Directive 325.00 was not followed.[2] The hearing officer denied each motion and found that "Policy Directive 325.00 was

---

[1] Disciplinary rule 1.03 is entitled, "rape/sexual assault/sexual abuse/sexual acts."

[2] Policy Directive 325.00 delineates the various disciplinary violations and sets forth the procedure for disciplining inmates.

1

followed." Petitioner also offered to plead guilty to the reduced charge of "physical contact," but the hearing officer denied his motion to reduce the charge.

Pursuant to disciplinary rule 2.36, "physical contact" constitutes a lesser disciplinary violation that is defined as "purposeful physical contact (i.e. embracing, holding hands, etc.) with any other person." As noted in the January 14, 2013 hearing report, Correctional Officer Taylor described the inmates' activity on December 21, 2012, as horseplay rather than a sexual act. However, the hearing officer credited Investigator Dixon's testimony that Correctional Officer Taylor was only a temporary officer who had not received any training under the Prison Rape Elimination Act of 2003 ("PREA"), 42 U.S.C. §§ 15601 to 15609. Investigator Dixon indicated that petitioner was charged with the more severe rule violation under 1.03(3), in part, because of the PREA.[3]

Petitioner denied he committed any "rape/sexual assault/sexual abuse/sexual act" under disciplinary rule 1.03 and desired to call the two other inmates as witnesses. The correctional hearing officer ruled that the other inmates were excused from testifying at petitioner's hearing as "they were all involved in the sex act." Based on the report and testimony of Investigator Dixon, as well as petitioner's own testimony, the hearing officer found petitioner guilty of violating rule 1.03(3). The hearing officer sentenced petitioner to sixty days of punitive segregation with loss of all privileges from January 3, 2013, to March 3, 2013.[4]

Petitioner administratively appealed his disciplinary conviction and sanction.[5] The Commissioner of Corrections affirmed the correctional hearing officer's decision prior to the issuance of Respondent Warden's decision. Pursuant to disciplinary rule 7.01(b)(2), Respondent Warden had thirty days to answer petitioner's appeal. Once that time period expired, petitioner proceeded to appeal to the Commissioner without a ruling from Respondent Warden. As found by the circuit court, the Commissioner has the practice of treating a lack of a decision from a warden as a "unfavorable answer" to an inmate's appeal. The Commissioner followed his practice in the instant case and proceeded to affirm the hearing officer's decision. Subsequently, on March 14, 2013, Respondent Warden answered petitioner's appeal and also upheld the hearing officer's decision.

On May 20, 2013, petitioner filed a petition for a writ of habeas corpus in the circuit court challenging his disciplinary conviction and sanction under rule 1.03(3). The circuit court

---

[3] The PREA was enacted to "protect the Eighth Amendment rights of Federal, *State*, and local *prisoners*," and to "establish a zero-tolerance standard for the incidence of prison rape in prisons in the United States[.]" 42 U.S.C. §§ 15602(1) and (7) (Emphasis added.).

[4] According to petitioner, the two other inmates were also charged under rule 1.03(3) and each received thirty days of punitive segregation with loss of all privileges.

[5] While petitioner has been released from punitive segregation, he has not been placed back in the general prison population. Rather, petitioner has been placed in administrative segregation.

conducted a preliminary review of the petition[6] and dismissed it in an order entered August 1, 2013. The circuit court specifically refuted numerous arguments raised by petitioner, which included (a) finding that sufficient evidence existed to support petitioner's conviction of disciplinary rule 1.03(3) and (b) concluding that petitioner's disciplinary proceeding comported with the due process standards set forth by this Court in Syllabus Point 1 of *Harrah v. Leverette*, 165 W.Va. 665, 271 S.E.2d 322 (1980).[7] The circuit court indicated that any argument it did not specifically address did not merit any discussion.

Petitioner appeals the circuit court's August 1, 2013, dismissing the petition. We review a circuit court's dismissal of a habeas petition under the following standard:

> In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review.

Syl. Pt. 1, *Mathena v. Haines,* 219 W.Va. 417, 633 S.E.2d 771 (2006).

STRICT COMPLIANCE WITH POLICY DIRECTIVE 325.00 WAS NOT REQUIRED.

Petitioner asserts that there were numerous instances where correctional officials failed to comply with the procedures set forth in Policy Directive 325.00. Respondent Warden counters that correctional officials met due process standards in petitioner's disciplinary proceeding. Section I of Policy Directive 325.00 states that while the policy is meant to serve as a procedural guideline governing the inmate disciplinary process, "[i]t shall not be construed as vesting any inmate a liberty or property interest greater than that, which is otherwise provided by law." Accordingly, this Court finds that the circuit court's determination that petitioner's disciplinary proceeding met

---

[6] The circuit court stated that it performed the preliminary review pursuant to Rule 4 of the West Virginia Rules Governing Post-Conviction Habeas Corpus Proceedings. However, the correct citation is to West Virginia Code § 25-1A-4, as this is the provision that allows pre-screening of habeas petitions in which only the terms and conditions of confinement are being challenged.

[7] Those standards are as follows: (a) written notice to the inmate of the claimed violation; (b) disclosure to the inmate of the evidence against him; (c) opportunity to be heard and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a neutral and detached hearing body; (f) a written statement by the fact-finders of the evidence relied on and reasons for discipline; and (g) the right to counsel if the State is represented by a lawyer.

the *Harrah* standards resolves all of petitioner's procedural arguments and that strict compliance with Policy Directive 325.00 was not required.

PETITIONER'S EQUAL PROTECTION CLAIM LACKS SUPPORT

Petitioner asserts that he received unequal treatment because he was sanctioned with sixty days of punitive segregation (followed by administrative segregation) while the two other inmates were sanctioned with only thirty days of punitive segregation even though they possessed far worse prison records. However, this Court "may disregard errors that are not adequately supported by specific references to the record on appeal." Rule 10(c)(7), W.V.R.A.P. The Court has reviewed petitioner's appendix and finds no information with regard to the respective prison records. Therefore, the Court disregards this alleged error.

PETITIONER HAD NO RIGHT TO BE CHARGED WITH A LESSER VIOLATION

Petitioner argues that the hearing officer should have reduced the charge to a lesser violation because Correctional Officer Taylor described the inmates' activity as horseplay rather than a sexual act. Respondent Warden counters that the circuit court correctly found that sufficient evidence existed to support petitioner's conviction of "rape/sexual assault/sexual abuse/sexual act" under disciplinary rule 1.03(3). This Court notes that the hearing officer—the finder of fact—credited Investigator Dixon's testimony that Correctional Officer Taylor was only a temporary officer who had not receive any training on the PREA which was meant to reduce, if not eliminate, inmate sexual assault. Where sufficient evidence exists, as in this case, to support multiple disciplinary rule violations, "the [S]tate, at its option, may choose to prosecute for the violation of one [rule] or for the violation of multiple [rules] under appropriate circumstances where multiple punishment is . . . authorized." *Snider v. Fox*, 218 W.Va. 663, 666 n. 6, 627 S.E.2d 353, 356 n. 6 (2006) (finding sufficient evidence for inmate's conviction of "rape" under disciplinary rule 1.03 when he grabbed the breast of a nurse) (Internal quotations and citations omitted.). Therefore, this Court concludes that petitioner had no right to be charged with a lesser violation.

With respect to all other issues raised, we hereby adopt and incorporate the circuit court's well-reasoned findings and conclusions as to the assignments of error raised in this appeal. The Clerk is directed to attach a copy of the circuit court's August 1, 2013 order to this memorandum decision

For the foregoing reasons, we find no error in the decision of the Circuit Court of Fayette County and affirm the circuit court's August 1, 2013 order dismissing the petition for a writ of habeas corpus.

Affirmed.

4

**ISSUED**: March 14, 2014

**CONCURRED IN BY**:

Chief Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II